THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
HAROLD YANTIS, Defendant-Appellant.

Fourth District   No. 4—83—0737

Opinion filed July 10, 1984.

MILLS, P.J., dissenting.

Daniel D. Yuhas and Jonathan Haile, both of State Appellate Defender's Office, of Springfield, for appellant.

Chris E. Freese, State's Attorney, of Sullivan (Robert J. Biderman and David E. Mannchen, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE WEBBER delivered the opinion of the court:

On February 10, 1982, pursuant to a plea agreement, defendant pleaded guilty in the circuit court of Moultrie County to the offense of deceptive practices in violation of section 17—1(B)(d) of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, par. 17—1(B)(d)). He was

sentenced to a six-month period of probation conditioned upon payment of restitution, court costs, and a fine which, together, totaled over $800.

On August 3, 1982, the State filed a petition to extend probation, alleging that defendant had not complied with the monetary conditions of his probation. The circuit court subsequently extended the defendant's probation for a period of one year and reaffirmed the original monetary conditions.

On August 9, 1983, the State filed a petition to revoke probation, again alleging that defendant had failed to pay any restitution, costs or fine as required by the court's initial order. The defendant filed an affidavit claiming indigency, and the court appointed the public defender to represent him. A hearing on the petition to revoke probation was scheduled for October 17, 1983. On that date defendant's counsel presented her oral motion to withdraw as counsel because of lack of communication with the defendant. The court denied counsel's motion and continued the hearing on the petition to revoke until October 24, 1983.

At the hearing the State requested the court to take judicial notice of defendant's file, which showed that no payments had been made. The State then called the defendant as its only witness. Defendant testified that, since February 1982, he had worked 9½ months for a detective agency, three weeks at a stone quarry, and four weeks for a truck company. He also collected unemployment compensation over the course of several months. In August 1982 he filed for bankruptcy and paid an attorney $250 to represent him in the proceedings. Defendant testified that this $250 was part of $2,500 he had received one month earlier as his share of a divorce settlement. He further testified that he was presently living with a woman who paid for all of their living expenses because he had no available money and no employment. He acknowledged that he had not made any payments pursuant to the court's probation order. On the basis of this testimony, the trial court ruled that the defendant had violated the terms of his probation in that he wilfully failed to pay the restitution, costs, and fine.

The court sentenced defendant to a further one-year period of probation on the condition that he serve 60 days in the county jail. The court also reaffirmed its original probation condition that required defendant to pay restitution, fine and all current costs. Defendant filed his timely notice of appeal on October 31, 1983.

On appeal defendant raises two arguments: (1) that the trial court had a duty to admonish him concerning his fifth amendment right

against self-incrimination, and (2) that his counsel was ineffective in allowing him to testify as the State's sole witness when only his testimony demonstrated a wilful failure to pay.

A preliminary inquiry must be made as to whether the fifth amendment privilege exists at a probation revocation hearing. Our research has revealed no direct Illinois authority on the point. In *People v. Roberson* (1964), 30 Ill. 2d 168, 195 N.E.2d 722, the defendant was called to testify by his own counsel at a bench trial. On appeal he claimed that the trial court should have admonished him as to his right of silence. The supreme court indicated that a different result might ensue if the defendant had appeared *pro se*, but held that the defendant's voluntary testimony at the request of his own counsel waived any constitutional privilege, saying:

"In the defendant's brief, it is conceded that no case has been found in which it had been held that a defendant represented by counsel must be advised by the court of his right to refuse to testify." 30 Ill. 2d 168, 170, 195 N.E.2d 722, 723.

We find two implications in this decision: (1) the undoubted existence of the privilege at trial, and more significantly (2) that the control of the privilege in the case of a represented defendant, that is, whether to assert or to waive, is in the hands of counsel, not of the trial court.

More recent Federal authority indicates that the privilege exists at the penalty phase of a criminal proceeding. In *Estelle v. Smith* (1981), 451 U.S. 454, 462-63, 68 L. Ed. 2d 359, 369, 101 S. Ct. 1866, 1873, the United States Supreme Court said:

"We can discern no basis to distinguish between the guilt and penalty phases of respondent's capital murder trial so far as the protection of the Fifth Amendment privilege is concerned. Given the gravity of the decision to be made at the penalty phase, the State is not relieved of the obligation to observe fundamental constitutional guarantees. [Citations.] Any effort by the State to compel respondent to testify against his will at the sentencing hearing clearly would contravene the Fifth Amendment."

The evidence in *Estelle* was that of a psychiatrist to whom the defendant had spoken. It is thus even more removed than the direct evidence of the defendant himself in the instant case.

We are persuaded that the fifth amendment privilege against self-incrimination exists at revocation of probation hearings. We are further persuaded that defense counsel must control both the assertion and the waiver of the privilege, even though the privilege is per-

sonal to the defendant. A good example of the proper procedure is found in *People v. Hartley* (1974), 22 Ill. App. 3d 108, 109, 317 N.E.2d 57, 58, where the court said:

> "The colloquy of record shows that out of the presence of the jury Holman's counsel requested that the court advise of the privilege against self-incrimination. He then asserted the claim of privilege."

■ In sum, we are of the opinion that there is no duty on a trial court to admonish a defendant of his privilege when he is represented by counsel. The case is obviously different when the defendant appears *pro se.* (*People v. Roberson* (1964), 30 Ill. 2d 168, 195 N.E.2d 722.) An example of the latter situation appears in *People v. Slaten* (1972), 5 Ill. App. 3d 405, 283 N.E.2d 12, where the defendant dismissed his appointed counsel and voluntarily took the stand after the State's evidence had been completed. The appellate court held that it would have been "the better practice" for the trial court to admonish the defendant, but found no error when the substance of defendant's testimony was, " 'I ain't sayin' nothin'.' " 5 Ill. App. 3d 405, 409, 283 N.E.2d 12, 15.

■ We turn next to the question whether counsel in the instant case fulfilled her duty. We think not.

Section 5—6—4(d) of the Unified Code of Corrections (Ill. Rev. Stat. 1983, ch. 38, par. 1005—6—4(d)) provides that probation will not be revoked because of a defendant's failure to comply with financial obligations imposed by the sentence "unless such failure is due to his wilful refusal to pay." It is incumbent upon the State to prove that a defendant failed to comply with the financial conditions of the probation and that such failure was wilful. (*People v. Harder* (1975), 59 Ill. 2d 563, 322 N.E.2d 470; *People v. Nowman* (1980), 87 Ill. App. 3d 42, 409 N.E.2d 95.) In the present case the State met this burden by requesting the court to take judicial notice of the clerk's file which showed the nonpayment and by eliciting testimony from the defendant which showed that he had the ability to make the payments.

The record is barren of any effort by defense counsel to interpose any kind of defense or objection to the defendant's testimony. Certainly nonpayment could be established by judicial notice of the court records, but the crucial element, wilfulness, was established out of the defendant's own mouth. It is comparable to the State's calling the defendant at a homicide trial and asking, "Did you shoot X?" All parties appeared to treat the matter as a civil proceeding where the opposite party may be called under section 2—1102 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—1102). We are un-

aware of any authority which holds that civil rules apply to probation revocation proceedings, except for the lesser burden of proof. (Ill. Rev. Stat. 1983, ch. 38, par. 1005—6—4(c).) The proceeding is still criminal and the defendant cannot be called to testify against himself. *Estelle v. Smith* (1981), 451 U.S. 454, 68 L. Ed. 2d 359, 101 S. Ct. 1866.

In Illinois the competency of counsel is tested by two elements: (1) whether counsel's actions produced substantial prejudice to the defendant, and (2) whether the result of the hearing would have been different without incompetent action. *People v. Greer* (1980), 79 Ill. 2d 103, 402 N.E.2d 203.

Although the record is silent as to counsel's motivations in this case, the State argues that allowing the defendant to testify was a tactical decision and as such should not be subject to criticism. However, we can perceive no tactical advantage for the defendant. It is apparent that without his testimony no proof of wilfulness existed. Whether the State could have produced other such evidence is purely speculative. We must take the record as we find it, and it reveals no rationale on the part of defense counsel for allowing the testimony and further reveals no effort on the part of the State to obtain, or the ability to obtain, other evidence of wilfulness.

Also, it cannot be gainsaid that defendant suffered prejudice. His probation was revoked and a jail term was imposed. None of this could have happened without his testimony, which laid the basis for the court's finding of wilfulness.

We appreciate Justice Mills' concerns as voiced in his dissent. However, we do not believe that *People v. Tempel* (1971), 131 Ill. App. 2d 955, 268 N.E.2d 875, cited in that dissent, is in conflict. There counsel, as a tactical decision, entered into a stipulation of violation, or as the court described it, an "evidentiary stipulation." This indicated a calculated decision on the part of counsel, as the colloquy recited in that opinion shows. No such basis is found in the instant case. If counsel had made any tactical decision here, it is shrouded in silence.

Nor do we quarrel with *Strickland v. Washington* (1984), 466 U.S. ___, 80 L. Ed. 2d 674, 104 S. Ct. 2052. In that case the record affirmatively showed various actions by defense counsel in seeking to build a case for his client and preventing the State from cross-examining him. None of that is present here. Even by applying the *Strickland* standard, we would reach the same result.

Because the defendant was denied the effective assistance of counsel at his sentencing hearing, the judgment of the circuit court of Moultrie County revoking probation and reimposing probation condi-

tioned upon a 60-day jail sentence is vacated and the cause is remanded to that court for a new revocation hearing.

Vacated and remanded with directions.

TRAPP, J., concurs.

PRESIDING JUSTICE MILLS, dissenting:
This is not incompetence of counsel *per se*!
If so, this court has gone 180 degrees.
In *People v. Tempel* (1971), 131 Ill. App. 2d 955, 268 N.E.2d 875, the defendant's attorney first admitted the probation violation and then declined to submit evidence of mitigation. We held in that case that the defendant was not denied effective assistance of counsel and further stated, "We cannot as a matter of supposition determine that the defendant might have had a defense, might not have violated his probation, might have had matters that could have been presented in mitigation, and that might have warranted a lesser sentence even if the violation was shown by evidence." 131 Ill. App. 2d 955, 960, 268 N.E.2d 875, 878.

The majority here would now "suppose" that, in the absence of defendant's testimony, the State was incapable of proving a matter as elementary as the income and expenses of a man on probation.

The majority's attempted distinction of *Tempel* is a mere gossamer web. The stipulation in that case had precisely the same effect as the defendant's testimony here; it provided the basis for the revocation of probation and without it the record would not support the judgment. While the majority makes much of the fact that it cannot perceive a tactical advantage in defense counsel's conduct here, it is silent as to the tactical advantage obtained by the stipulation in *Tempel*. If Yantis' counsel had made an "evidentiary stipulation" as to his income and expenses, I wonder whether the majority would have considered that a "calculated decision" and effective assistance of counsel.

The latest pronouncement of the United States Supreme Court is that the inquiry on a claim of ineffectiveness of counsel is whether counsel's assistance was reasonable under all of the circumstances when viewed as of the time of counsel's conduct. (*Strickland v. Washington* (1984), 466 U.S. ___, 80 L. Ed. 2d 674, 104 S. Ct. 2052.) In the present case, defense counsel allowed defendant to testify about his income and expenses. *At the time,* this testimony must have appeared rather harmless. Defense counsel might have allowed it as a

convenience to the court in the hope of lenient treatment, since the State certainly could have established defendant's income and expenses through more circuitous and time consuming evidence. But *hindsight* always has 20/20 vision.

Upon reviewing a claim of ineffectiveness of counsel, the court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance \*\*\*." *Strickland v. Washington* (1984), 466 U.S. ___, ___, 80 L. Ed. 2d 674, 694-95, 104 S. Ct. 2052, 2065-66.) Under the circumstances of this case, I am not persuaded that defendant has overcome this presumption when defense counsel's conduct is viewed as of the time he allowed defendant to testify.

Even if the conduct was professionally unreasonable, the defendant must affirmatively prove prejudice. (*Strickland v. Washington* (1984), 466 U.S. ___, 80 L. Ed. 2d 674, 104 S. Ct. 2052.) "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Strickland v. Washington* (1984), 466 U.S. ___, ___, 80 L. Ed. 2d 674, 698, 104 S. Ct. 2052, 2068.) The majority, by erasing defendant's testimony from the record and looking at what is left, concludes that the result would have been different if defendant had not testified. If we were dealing only with a question of whether the evidence supported the judgment, I would agree that our review should be confined to the record and that we should not concern ourselves with what might have been. However, we are dealing with questions of attorney incompetence, of assistance reasonable under all of the circumstances at the time of the assistance, and of the reasonable probability of a different result. For this reason, I believe it is appropriate to consider the likelihood of defendant prevailing if he had not testified.

In *People v. Greer* (1980), 79 Ill. 2d 103, 121, 402 N.E.2d 203, 212, the supreme court said, "\*\*\* we do not believe that the Constitution requires a new trial for every defendant whose counsel errs at trial, *particularly in the absence of a demonstration that the outcome of a new trial would probably be different*." (Emphasis added.) In our case, defendant has not demonstrated that the outcome of a *new* trial would be different. The evidence introduced through defendant's testimony was *not* inadmissible and will not be upon retrial. Again, all that defendant testified to was his income and expenses. I find it incredible to assume that the State will not be able to prove this, without defendant's testimony, on remand.

The rule established by the majority seems to be that it is incom-

petence *per se* for defense counsel to allow a defendant to testify where that testimony provides the only evidence of an element of the offense—regardless of whether the State could have proved the matter without defendant's testimony. I cannot buy it.

The Supreme Court warned in *Strickland*: "Intensive scrutiny of counsel and rigid requirements for acceptable assistance could dampen the ardor and impair the independence of defense counsel, discourage the acceptance of assigned cases, and undermine the trust between attorney and client." *Strickland v. Washington* (1984), 466 U.S. ___, ___, 80 L. Ed. 2d 674, 695, 104 S. Ct. 2052, 2066.

There will certainly be a great dampening of the ardor in a district where an attorney may be found incompetent for merely allowing his client to testify of his income at a probation revocation hearing.

I must dissent.