(No. 71289.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. ERNEST PERRY, Appellee.

*Opinion filed March 19, 1992.*

Neil F. Hartigan and Roland W. Burris, Attorneys General, of Springfield, and William R. Haine, State's Attorney, of Edwardsville (Rosalyn B. Kaplan, Solicitor General, Terence M. Madsen and Steven J. Zick, Assistant Attorneys General, of Chicago, and Kenneth R. Boyle, Stephen E. Norris and Raymond F. Buckley, Jr., of the Office of the State's Attorneys Appellate Prosecutor, of Mt. Vernon, of counsel), for the People.

Daniel M. Kirwan, Deputy Defender, and Lawrence J. O'Neill, Assistant Defender, of the Office of the State Appellate Defender, of Mt. Vernon, for appellee.

JUSTICE CLARK delivered the opinion of the court:

The issue in this case is whether defendant's acceptance of the assistance of counsel at his arraignment on charges of robbery and aggravated battery was an invocation of his rights under article I, section 10, of the Illinois Constitution that precluded police-initiated interrogation of an unrelated, uncharged homicide while the defendant was in continuous custody.

Following a jury trial in the circuit court of Madison County, defendant, Ernest Perry, was convicted of two counts each of murder and home invasion in connection with the stabbing deaths of Alvin Autery and Mary Irwin. The trial court sentenced defendant to two concurrent sentences of imprisonment for natural life with-

out parole for the murders, and 30-year prison sentences for each home invasion conviction. The appellate court reversed and remanded for a new trial, holding that the trial court erred in refusing to suppress defendant's confession. (205 Ill. App. 3d 655.) We granted the State's petition for leave to appeal (134 Ill. 2d R. 315). We now reverse.

The facts in this case are not in dispute. Defendant was arrested on January 6, 1987, pursuant to an outstanding robbery warrant, and was transported to the police station in Alton, Illinois. The robbery warrant was unrelated to any of the crimes for which defendant was tried and convicted in this case. Upon arrival at the police station, defendant was "booked" and read his *Miranda* rights. (See *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602.) Subsequently, defendant was interviewed by Alton Police Officer Anthony Ventimiglia and Detective Lindell Pyatt regarding defendant's possible involvement in the aforementioned Autery-Irwin murders. Defendant gave an oral statement denying any involvement in the murders.

The following day, January 7, 1987, defendant was arraigned on charges of robbery and aggravated battery in the circuit court of Madison County. These charges were related to the initial robbery warrant pursuant to which defendant was arrested, but were wholly unrelated to the Autery-Irwin murders. At the arraignment, defendant requested that an attorney be appointed to represent him. The circuit court granted defendant's request, appointed the public defender, and directed that defendant be transferred to the Madison County jail. The Alton police, however, obtained a "hold order" so that they could keep defendant in their municipal jail for another day.

On January 8, 1987, the Alton police again interviewed defendant regarding the Autery-Irwin murders. Prior to the interview defendant was advised of his *Miranda* rights. At this time, defendant gave a statement confessing to his involvement in the murders. Defendant was subsequently charged with the murders of Alvin Autery and Mary Irwin, and two counts of home invasion.

Prior to trial, defendant filed a motion to suppress his confession on the basis that it had been obtained outside the presence of defense counsel. After an evidentiary hearing, the trial court denied defendant's motion to suppress. Defendant's confession was admitted at trial, and defendant was subsequently convicted.

The appellate court reversed and remanded for a new trial, stating that defendant's confession was improperly admitted at trial. Specifically, the appellate court recounted that on January 7, 1987, defendant was arraigned on robbery and aggravated battery charges. At that time, he requested that an attorney be appointed to represent him, and the circuit court entered an order appointing the public defender to serve as defense counsel. The appellate court then stated:

"There is nothing in the record before us to indicate that when defendant made his request he was seeking legal assistance only with respect to the formal legal proceedings which had then been initiated against him. *Accordingly, defendant's request must be construed as a general request for legal assistance, pursuant to the fifth amendment, in any subsequent interrogation to which he might be subjected while he remained in continuous physical custody.* [Citations.] Under *Edwards v. Arizona* (1981), 451 U.S. 477, 68 L. Ed. 2d 378, 101 S. Ct. 1880, the police were therefore prohibited under the fifth amendment from initiating any further interrogation of him, as they did [on January 8, 1987], without first making counsel

available to him." (Emphasis added.) 205 Ill. App. 3d at 659.

The appellate court also found support for its decision in *Arizona v. Roberson* (1988), 486 U.S. 675, 100 L. Ed. 2d 704, 108 S. Ct. 2093.

Subsequent to the appellate court decision in this case, the United States Supreme Court issued its opinion in *McNeil v. Wisconsin* (1991), 501 U.S. ___, 115 L. Ed. 2d 158, 111 S. Ct. 2204. In *McNeil*, the Supreme Court held that the defendant's invocation of his sixth amendment right to counsel during a judicial proceeding as to one offense does not constitute the invocation of the defendant's fifth amendment right to counsel under *Miranda* as to uncharged offenses. (*McNeil*, 501 U.S. at ___, 115 L. Ed. 2d at 168-71, 111 S. Ct. at 2208-11.) In support of this holding, the Court proffered the following distinctions between the sixth and fifth amendments. First, the Court noted that the sixth amendment right to counsel attaches at or after the initiation of adversary judicial proceedings, *i.e.*, a formal charge, preliminary hearing, indictment, information, or arraignment. (*McNeil*, 501 U.S. at ___, 115 L. Ed. 2d at 166-67, 111 S. Ct. at 2207-08.) The fifth amendment right to counsel, however, applies strictly to custodial interrogation and attaches whether or not formal judicial proceedings have been initiated. Second, the Court noted that the purpose of the sixth amendment is to " 'protec[t] the unaided layman at critical confrontations' with his 'expert adversary,' the government, *after* 'the adverse positions of government and defendant have solidified' with respect to a particular alleged crime." (Emphasis in original.) (*McNeil*, 501 U.S. at ___, 115 L. Ed. 2d at 168, 111 S. Ct. at 2208-09, quoting *United States v. Gouveia* (1984), 467 U.S. 180, 189, 81 L. Ed. 2d 146, 155, 104 S. Ct. 2292, 2298.) The purpose of invoking the *Miranda-Edwards* fifth amendment right to counsel, on

the other hand, is to protect "the suspect's 'desire to deal with the police only through counsel.' " *McNeil*, 501 U.S. at ___, 115 L. Ed. 2d at 168, 111 S. Ct. at 2209, quoting *Edwards v. Arizona* (1981), 451 U.S. 477, 484, 68 L. Ed. 2d 378, 386, 101 S. Ct. 1880, 1885.

Third, the Court noted that whereas the sixth amendment right to counsel is "offense-specific"—meaning that it cannot be invoked for all future prosecutions (*McNeil*, 501 U.S. at ___, 115 L. Ed. 2d at 166, 111 S. Ct. at 2207)—the *Miranda-Edwards* fifth amendment right to counsel is not "offense-specific"—once a suspect asserts this right, further police-initiated interrogation as to any offense is prohibited unless counsel is present. (*McNeil*, 501 U.S. at ___, 115 L. Ed. 2d at 168, 111 S. Ct. at 2208, citing *Arizona v. Roberson* (1988), 486 U.S. 675, 100 L. Ed. 2d 704, 108 S. Ct. 2093.) Based on these critical distinctions between the sixth and fifth amendments right to counsel, the Court found it factually incorrect and inadvisable as a matter of public policy to infer that the invocation of the sixth amendment right to counsel as to one offense constituted the invocation of the fifth amendment right to counsel as to unrelated and uncharged offenses. *McNeil*, 501 U.S. at ___, 115 L. Ed. 2d at 168, 111 S. Ct. at 2209.

In light of *McNeil*, the State correctly argues, and defendant must concede, that the appellate court's analysis in this case is void. The appellate court ruled that by invoking his sixth amendment right to counsel at his arraignment on the robbery and aggravated battery charges, defendant also invoked his fifth amendment right to counsel as to the Autery-Irwin murders. Consequently, pursuant to *Edwards*, when the police initiated further interrogation of defendant regarding the murders, defendant's fifth amendment right to counsel was violated. (205 Ill. App. 3d at 661.) This legal reasoning was expressly rejected in *McNeil*. Nonetheless, defend-

ant claims that although the legal reasoning of the appellate court opinion is suspect, the ultimate conclusion, *i.e.*, the suppression of defendant's confession, is correct based on article I, section 10, of the State of Illinois Constitution.

We disagree. Article I, section 10, of the Illinois Constitution of 1970 provides, "No person shall be compelled in a criminal case to give evidence against himself nor be twice put in jeopardy for the same offense." (Ill. Const. 1970, art. I, §10.) Defendant would like us now to read our State constitutional privilege against self-incrimination more broadly than its Federal counterpart (see U.S. Const., amend. V). In appropriate cases, this court certainly has the right and the obligation to interpret our State Constitution more liberally than similar provisions of the Federal Constitution. In this case, however, we find that the Supreme Court's analysis and conclusion in *McNeil* adequately safeguard the competing objectives of effective law enforcement and an individual's privilege against self-incrimination confronting us. Consequently, for the reasons set forth in *McNeil v. Wisconsin*, we find that defendant's privilege against self-incrimination was not violated under either the United States Constitution or the State of Illinois Constitution.

In light of our decision today, we reverse the judgment of the appellate court and remand this cause to that court for consideration of defendant's remaining arguments.

*Reversed and remanded.*