Fifth Division

Filed: 11/03/00

No. 1-98-4201

MURISOL VELOZ RELSOLELO, Special )   Appeal from the Circuit

Administrator of the Estate of Jose )   Court of Cook County

Humberto Arellano, Deceased, 
et al
., )

)

Plaintiffs-Appellees, )

)   No. 94 L 12266

v. )

)

JOHN FISK, )   Honorable

)   Jennifer Duncan-Brice,

Defendant-Appellant. )   Judge Presiding.

JUSTICE ZWICK delivered the opinion of the court:

Defendant, John Fisk, brought this interlocutory appeal, pursuant to Supreme Court Rule 304(b)(5), challenging a civil contempt order entered by the trial court.  The trial court held defendant in contempt for his refusal to comply with a prior order compelling his deposition testimony in a personal injury action filed by plaintiffs.  The only issue presented is whether the defendant can avoid testifying at the deposition by asserting his constitutional right against self-incrimination based upon certain charges filed against him in Venezuela.

Plaintiffs are or represent Venezuelan nationals or residents who filed the instant action seeking recovery for personal injuries and wrongful deaths caused by a natural gas pipeline explosion which occurred during the installation of a fiber optic telephone cable in Venezuela.  
Defendant is an American citizen and resident who is alleged to have served as the project manager for the Venezuelan corporation which was responsible for the cable installation project in Venezuela.  
On September 28, 1993, a rotoexcavator operated by Abengoa Venezuela, S.A., a subcontractor for a portion of the project, apparently came into contact with a subterranean natural gas pipeline located beside a highway near Tijeras, Venezuela.  The resulting explosion allegedly caused the injuries and deaths for which plaintiffs now seek recovery.

Shortly after the accident, a warrant was issued for defendant's arrest in Venezuela, charging him with "
incendio in forma culposa
" in violation of Article 357 of the Venezuelan Penal Code.  The Republic of Venezuela allows a private individual to initiate criminal proceedings.  Defendant, who is presently in the United States, has not answered the charges against him in Venezuela.

The instant case is one of twelve actions filed against defendant, AT & T Corp., its subsidiaries and employees, and various other corporations throughout the United States.  Three of the related actions have been dismissed based upon 
forum non conveniens
.  Three, including the instant action remain pending.  The balance have been dismissed voluntarily or otherwise.  Defendant, who also seeks dismissal for 
forum non conveniens
, has asserted that this action was improperly brought against him, not for the purpose of establishing his liability, but rather to fix venue in this jurisdiction so that corporate defendants may be joined.

Plaintiffs served interrogatories upon defendant on October 10, 1996.  Defendant answered those interrogatories on November 12, 1996, in many instances asserting his privilege against self-incrimination based upon a fear of criminal prosecution in Venezuela.  During his deposition, defendant again asserted his privilege against self-incrimination.  The questions which defendant declined to answer included those seeking information concerning his job title; the nature of his duties; his involvement in planning, engineering, and obtaining permits; and other inquiries which might tend to provide a link in the chain of evidence that could lead to his conviction of the criminal charges.

Plaintiffs filed a motion to compel defendant to answer discovery, asserting that he did not possess a reasonable fear of foreign prosecution.  In opposition to plaintiffs' motion to compel, defendant contended that he possessed a right against self-

incrimination and that his fear of foreign prosecution was reasonable because (1) there were criminal charges pending against him in Venezuela, (2) the criminal charges arose from the same subject matter as the plaintiffs' civil action, (3) the testimony sought to be adduced would bear directly upon the criminal charges or would provide a link in the chain of evidence which could lead to his conviction, (4) defendant's testimony would further the Venezuelan prosecutions, and there existed a strong likelihood that his compelled testimony would be disclosed to Venezuelan authorities, and (5) the criminal charges pending against him in Venezuela were extraditable offenses pursuant to the Extradition Treaty Between the United States and Venezuela.
(footnote: 1)
After a succession of hearings before Judge Hogan and Judge Duncan-Brice, the plaintiffs' motion to compel was denied.  Judge Hogan specifically found that defendant possessed a reasonable apprehension of foreign prosecution and extradition upon which his privilege against self-incrimination could be based.  Judge Duncan-

Brice later found that the specific deposition questions posed to defendant fell within the protection of his right against self-incrimination.

Plaintiffs subsequently sought reconsideration of the denial of their motion to compel.  Plaintiffs' request for reconsideration was premised upon the United States Supreme Court's ruling in 
United States v. Balsys
, 524 U.S. 666, 141 L. Ed. 2d 575, 118 S. Ct. 2218 (1998), which held that, absent certain particular exceptions, a witness could not assert his federal fifth amendment privilege against self-incrimination based upon a fear of prosecution by a foreign country.  In opposition to the plaintiffs' motion for reconsideration, defendant contended 
that his assertion of the privilege could be sustained under Article I, section 10 of the Illinois Constitution as well as under the fifth amendment.   Judge Duncan-Brice ruled that the circuit court was bound by the holding in 
Balsys
 and granted the plaintiffs' motion for reconsideration, finding that defendant could not base his privilege against self-incrimination upon a fear of prosecution in Venezuela.  When defendant respectfully refused to comply with the order compelling his testimony, Judge Duncan-Brice held him in contempt and assessed a monetary sanction of $10.  Defendant thereafter brought the instant appeal.

As noted above, the only issue before this court is whether the defendant is precluded from asserting his constitutional right against self-incrimination based upon the charges filed against him in Venezuela.  This issue is one of first impression and presents a question of law, which we review 
de novo
.  
Branson v. Department of Revenue
, 168 Ill. 2d 247, 254, 659 N.E.2d 961 (1995).

The self-incrimination clause contained in the fifth amendment provides that "[n]o person *** shall be compelled in any criminal case to be a witness against himself."  U.S. Const., amend. V.  Our state constitution includes a similar privilege in article I, section 10, which states that "[n]o person shall be compelled in a criminal case to give evidence against himself nor be twice put in jeopardy for the same offense."  Ill. Const. 1970, art.  I, § 10.  The privilege against self incrimination may by invoked in any proceeding, civil or criminal, in which the witness reasonably believes that the information sought, or discoverable as a result of his testimony, could be used in a subsequent criminal proceeding against him. proceedings.  proceedings.  
Allen v. Illinois
, 478 U.S. 364, 368, 92 L. Ed. 2d 296, 303, 106 S. Ct. 2988, 2991 (1986); 
People v. James
, 304 Ill. App. 3d 52, 59, 710 N.E.2d 484 (1999).

In issuing the order compelling defendant to testify, Judge Duncan-Brice determined that the ruling in 
Balsys
 was controlling and precluded defendant from asserting his privilege against self-incrimination.  

In 
United States v. Balsys
, 524 U.S. 666, 141 L. Ed. 2d 575, 118 S. Ct. 2218 (1998), the respondent, Aloyzas Balsys, was a resident alien, who was subpoenaed to testify about his wartime activities between 1940 and 1944 and his immigration to the United States.  Balsys asserted his federal fifth amendment privilege against self-

incrimination premised upon a fear of prosecution by a foreign nation.  In claiming the privilege, Balsys contended that his testimony could subject him to criminal prosecution by Lithuania, Israel, and Germany for alleged Nazi war crimes.  
United States v. Balsys
, 524 U.S. 666, 670, 141 L. Ed. 2d 575, 583, 118 S. Ct. 2218, 2221 (1998).

The Supreme Court concluded 
in 
Balsys
 that the respondent's fear of foreign prosecution was beyond the scope of the fifth amendment self-incrimination clause contained in the United States Constitution.  
Balsys
, 524 U.S. at 700, 141 L. Ed. 2d at 601, 118 S. Ct. at 2236.  In so holding, the Supreme Court resurrected the "same sovereign" rule, which dictates that the privilege may be asserted only when the defendant reasonably fears prosecution by the government seeking to compel the testimony.  
Balsys
, 524 U.S. at 673-74, 141 L. Ed. 2d at 585-86, 118 S. Ct. at 2223.  After detailing the historical origin and evolution of the fifth amendment, including its application to state prosecutions by incorporation in the 14
th
 amendment's due process clause (
Malloy v. Hogan
, 378 U.S. 1, 12 L. Ed. 2d 653, 84 S. Ct. 1489 (1964)), the court held that the risk of criminal prosecution by a foreign government not subject to our constitutional guarantees did not implicate the fifth amendment's privilege against self-

incrimination.  
Balsys
, 524 U.S. at 673-74, 141 L. Ed. 2d at 585, 118 S. Ct. at 2223.  Of pivotal importance in the court's reasoning was the fact that a grant of full immunity by the government compelling the testimony is equivalent to the protection furnished by the privilege.  
Balsys
, 524 U.S. at 677, 141 L. Ed. 2d at 587, 118 S. Ct. at 2225.  Therefore, the compelling government has the option of exchanging the witness's privilege for immunity from prosecutorial use of any compelled inculpatory testimony.  
Balsys
, 524 U.S. at 682, 141 L. Ed. 2d at 590, 118 S. Ct. at 2227.  Recognizing this, the court stated that the limitation imposed by the fifth amendment does not provide protection of personal testimonial inviolability, but rather a conditional protection of testimonial privacy which is implemented through the immunity doctrine and the exclusionary rule.  
Balsys
, 524 U.S. at 692-93, 141 L. Ed. 2d at 597, 118 S. Ct. at 2232.  The court observed that the policies and purposes of the privilege are defeated where domestic courts are unable to enforce grants of immunity abroad.  
Balsys
, 524 U.S. at 693, 141 L. Ed. 2d at 597, 118 S. Ct. at 2232.

Defendant has attempted to distinguish 
Balsys
 by arguing that he enjoys a similar privilege pursuant to Article 60(4) of the Constitution of the Republic of Venezuela and Article 14(g) of the International Covenant on Civil and Political Rights, a treaty signed by both the United States and Venezuela.  However, the court in 
Balsys
 stated that the constitutional privilege may be asserted only against governments bound by the same limitation: the federal government through the fifth amendment and state governments by virtue of 14
th
 amendment due process incorporation.  
Balsys
, 524 U.S. at 682-83, 141 L. Ed. 2d at 591, 118 S. Ct. at 2227-28.

Based upon the foregoing, we hold that the circuit court correctly concluded that the decision in 
Balsys
 precluded the defendant from asserting his fifth amendment privilege against self-incrimination based upon a fear of criminal prosecution in Venezuela.

However, article I, section 10 of the Illinois Constitution establishes an independent source for the privilege against self-incrimination.  Ill.  Const. 1970, art. I, § 10.  Although Illinois courts have followed the decisions of the United States Supreme Court in cases where federal and state constitutional provisions are similar, the Illinois Supreme Court has declared that we are not bound by the "lockstep doctrine."  
People v. Krueger
, 175 Ill. 2d 60, 74, 675 N.E.2d 604 (1996).  In appropriate circumstances, the Illinois Constitution may be construed to provide more expansive protections than those afforded by comparable federal constitutional provisions.  
Krueger
, 175 Ill. 2d at 74; 
People v. Mitchell
, 165 Ill. 2d 211, 217, 650 N.E.2d 1014 (1995).  Indeed, the Illinois Supreme Court has definitively held that the constitutional guarantees under article I, section 10 of our constitution afford a greater degree of protection than those provided by the fifth amendment to the United States Constitution.  
People v. McCauley
, 163 Ill. 2d 414, 424, 645 N.E.2d 923 (1994).  But 
cf.
 
People v. Perry
, 147 Ill.2d 430, 590 N.E.2d 454 (1992).

This provision of the Illinois Bill of Rights is to be broadly applied and liberally construed with close questions being decided in favor of permitting the witness to remain silent.  
In re Zisook
, 88 Ill. 2d 321, 334, 430 N.E.2d 1037 (1981); citing 
People v. Burkert
, 7 Ill. 2d 506, 131 N.E.2d 495 (1955).  The privilege against self-

incrimination has been construed as "'an absolute guaranty to every person appearing as a witness in any court in this state against being required to answer any question the answer to which will expose or tend to expose him to any penalty, fine, forfeiture, or punishment, or tend to accuse him of any crime or misdemeanor, or [which] will be evidence which will form a link in a chain of evidence to convict him of a criminal offense.'" 
City of Chicago v. Berg
, 48 Ill. App. 2d 251, 259, 199 N.E.2d 49 (1964), quoting 
People v. Nachowicz
, 340 Ill. 480, 172 N.E. 812 (1930).

Upon thoughtful consideration of the policies underlying our constitutional privilege against self-incrimination, we are convinced that the privilege against self-

incrimination must be available to a witness who fears that compelled testimony may lead to prosecution in foreign as well as domestic jurisdictions.  The privilege embodies a basic civil right which reflects our fear that self-incriminating statements will be elicited by inhumane treatment and abuses.  See 
Balsys
, 
524 U.S. at 714, 141 L. Ed. 2d at 610, 118 S. Ct. at 2243 (Breyer, J., dissenting).  This concern with governmental overreaching is implicated as much when the foreseen prosecution is by another country as when it is by another domestic court.  
Balsys
, 
524 U.S. at 714, 141 L. Ed. 2d at 610, 118 S. Ct. at 2243 (Breyer, J., dissenting.).  The privilege against self-

incrimination is historically linked with the abolition of torture (
Balsys
, 
524 U.S. at 701, 141 L. Ed. 2d at 602, 118 S. Ct. at 2236 (Ginsburg, J., dissenting)) and "reflects *** our unwillingness to subject those suspected of crime to the cruel trilemma of self-

accusation, perjury or contempt" (
Murphy v. Waterfront Comm'n of N.Y. Harbor
, 378 U.S. 52, 55, 12 L. Ed. 2d 678, 681, 84 S. Ct. 1594, 1596 (1964)).  Thus, the privilege guarantees a right of fundamental decency and dignity which precludes a court from extracting testimony from a witness who reasonably fears a subsequent criminal prosecution by another sovereign, be it in a different domestic jurisdiction or in a foreign country.  
Balsys
, 
524 U.S. at 701-02, 141 L. Ed. 2d at 602-03, 118 S. Ct. at 2237 (Ginsburg, J., dissenting).

In the case at bar, Judge Hogan found that defendant had a reasonable fear of foreign prosecution and, therefore, was entitled to assert his privilege against self-

incrimination in the civil proceedings brought by the plaintiffs.  Judge Duncan-Brice did not overrule or vacate that finding.  Rather, her subsequent ruling that defendant was precluded from asserting the privilege was premised upon the holding in 
Balsys
, which applied the restrictive “same sovereign” approach to the fifth amendment.  Because the protection afforded by article 1, section 10 of the Illinois Constitution is broader than that granted by the fifth amendment to the U.S. Constitution, defendant was entitled to invoke his privilege against self-incrimination based upon a reasonable fear of criminal prosecution in Venezuela.

The only question remaining is whether the defendant was subject to extradition.  Defendant has argued that he is entitled to invoke the privilege because he has been charged with an extraditable criminal offense.  The plaintiffs disagree, arguing that defendant should be precluded from claiming the privilege because he lacked a reasonable fear of criminal prosecution in Venezuela.  The plaintiffs' argument is supported by their assertion that defendant has not been charged with an extraditable offense and by defendant's statement that he would never voluntarily return to Venezuela.

The extradition treaty between the United States and Venezuela provides that "
incendio
" is an extraditable offense.  See Article II, par. 5, Extradition Treaty Between the United States and Venezuela, January 19 and 21, 1922, 43 Stat. 1698, T.S. 675, 49 L.N.T.S. 435.  The record establishes that defendant has been charged with "
incendio en forma culposa
" under Article 357 of the Venezuela Penal Code.

The law of a foreign country may not be judicially noticed in Illinois, but becomes an issue to be decided by the court.  735 ILCS 5/8-1007; 
Vrozos v. Sarantopoulos
, 195 Ill. App. 3d 610, 618-19, 552 N.E.2d 1093 (1990); 
Atwood Vacuum Machine Co. v. Continental Casualty Co.
, 107 Ill. App. 2d 248, 262-63, 246 N.E.2d 882 (1969).  In the case at bar, the plaintiffs have conceded that the provision of the Venezuelan Penal Code under which defendant has been charged mandates a minimum prison term of three months and a maximum term of ten years
.  Judge Hogan determined that the offenses of "
incendio en forma culposa
" under the criminal code and "
incendio
" as contemplated by the Extradition Treaty were sufficiently identical to conclude that defendant would be subject to extradition to Venezuela.  As noted above, this determination was not overruled by the subsequent order requiri
ng defendant to comply with discovery, and the record provides no evidentiary basis supporting reversal of the court's finding.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed, and the cause is remanded.

Reversed and remanded.

CAMPBELL, P.J., and O'BRIEN, J., concur.

FOOTNOTES
1:
Defendant was charged with "
incendio in forma culposa
."  The Extradition Treaty, executed in Spanish an English counterparts, provides that "
incendio
" is an extraditable offense.  See Article II, par. 5, Extradition Treaty Between the United States and Venezuela, January 19 and 21, 1922, 43 Stat. 1698, T.S. 675, 49 L.N.T.S. 435.