THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JERRY L. LINDSEY, Defendant-Appellant.

Fourth District   No. 4—00—0296

Opinion filed March 20, 2001.

Daniel D. Yuhas and Lawrence J. Essig, both of State Appellate Defender's Office, of Springfield, for appellant.

Frank Young, State's Attorney, of Danville (Norbert J. Goetten, Robert J. Biderman, and Thomas R. Dodegge, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE STEIGMANN delivered the opinion of the court:

In May 1999, defendant, Jerry L. Lindsey, pleaded guilty to one count of aggravated criminal sexual abuse (720 ILCS 5/12—16(d) (West 1998)). In July 1999, the trial court sentenced him to four years' "sex[-]offender specific" intensive probation subject to various conditions, including that he serve 364 days of work release. In February 2000, the trial court granted the State's petition to revoke defendant's probation and subsequently resentenced him to another 4 years' probation and 364 days' work release.

Defendant appeals, arguing that (1) his being forced to testify as a witness for the State at his probation revocation hearing violated (a) his privilege against self-incrimination under the fifth amendment to the United States Constitution and article I, section 10, of the Illinois Constitution (U.S. Const., amend. V; Ill. Const. 1970, art. I, § 10), and (b) his due process rights under the fifth amendment to the United States Constitution and article I, section 2, of the Illinois Constitution

(U.S. Const., amend. V; Ill. Const. 1970, art. I, § 2); and (2) the trial court erred by not granting him "day-for-day" credit for time he served in custody. We affirm.

## I. BACKGROUND

The State's January 2000 petition to revoke defendant's probation alleged that defendant violated a condition of his probation by signing out of the jail where he was serving his work release on two occasions when he was not authorized to do so. At the January 2000 hearing on that petition, the evidence showed that defendant had been allowed to leave the jail daily to attend sex-offender treatment at the Prairie Center. LeAnn Chexem, a counselor at the Prairie Center, testified that defendant completed the first phase of his treatment on December 30, 1999, and she told defendant that from that point forward (1) he would be attending counseling three days a week instead of five, and (2) his sessions would begin at 10 a.m. rather than 9 a.m.

According to the State's petition, (1) on January 3, 2000, defendant signed out of the jail 1½ hours prior to his scheduled appointment at the Prairie Center, and (2) on January 4, 2000, he signed out of the jail in the morning even though he did not have an appointment at the Prairie Center.

The State called defendant as an adverse witness. Over defense counsel's objection, defendant testified regarding the circumstances of his signing out of the jail on the two dates in question.

The trial court found that defendant had violated the terms of his probation. Following the February 8, 2000, sentencing hearing, the court resentenced defendant as stated with no credit for time previously served on probation. On February 22, 2000, defendant filed a motion to reconsider all findings. In March 2000, the trial court conducted a hearing on defendant's motion and denied it. This appeal followed.

## II. ANALYSIS

### A. Defendant's Privilege Against Self-Incrimination

Defendant first argues that being forced to testify at his probation revocation hearing violated his right not to incriminate himself under the fifth amendment of the United States Constitution and article I, section 10, of the Illinois Constitution (U.S. Const., amend. V; Ill. Const. 1970, art. I, § 10). We disagree.

■ Where no fact or credibility issues are involved, we apply a *de novo* standard of review. *People v. Dilworth*, 169 Ill. 2d 195, 201, 661 N.E.2d 310, 314 (1996).

In *People v. Martin*, 226 Ill. App. 3d 753, 589 N.E.2d 815 (1992),

this court addressed whether the defendant's fifth amendment privilege against self-incrimination was violated when the State called him to testify at his probation revocation hearing. Relying on *Minnesota v. Murphy*, 465 U.S. 420, 79 L. Ed. 2d 409, 104 S. Ct. 1136 (1984), *Allen v. Illinois*, 478 U.S. 364, 92 L. Ed. 2d 296, 106 S. Ct. 2988 (1986), *People v. Davis*, 216 Ill. App. 3d 884, 576 N.E.2d 510 (1991), and Professor LaFave (3 W. LaFave & J. Israel, Criminal Procedure § 25.4, at 164 (1984)), we held that a defendant's fifth amendment privilege against self-incrimination was not violated by the State's calling him to testify at his probation revocation hearing "to elicit testimony which would show that the defendant had violated conditions of his probation but which would not incriminate him in any other proceedings." *Martin*, 226 Ill. App. 3d at 759, 589 N.E.2d at 818.

Defendant now urges us to reconsider *Martin* in light of the Second District Appellate Court's recent decision in *People v. McNairy*, 309 Ill. App. 3d 220, 721 N.E.2d 1200 (1999). In that case, the defendant was called to testify as an adverse witness for the State at his probation revocation hearing. *McNairy*, 309 Ill. App. 3d at 221, 721 N.E.2d at 1201. The defendant argued on appeal that article I, section 10, of the Illinois Constitution confers a privilege against self-incrimination that extends to noncriminal probation violations. *McNairy*, 309 Ill. App. 3d at 221, 721 N.E.2d at 1201.

The *McNairy* court acknowledged that the "United States Supreme Court has determined that compelling a probationer to testify as to criminal violations of probation does not offend the privilege against self-incrimination contained in the fifth amendment to the United States Constitution." *McNairy*, 309 Ill. App. 3d at 222, 721 N.E.2d at 1201. However, the court went on to hold that "the protections afforded under article I, section 10, of the Illinois Constitution apply to a probation revocation proceeding" and the trial court erred by allowing the State to call the defendant to testify as an adverse witness. *McNairy*, 309 Ill. App. 3d at 223, 721 N.E.2d at 1202.

The *McNairy* court concluded that a probation revocation hearing is a criminal proceeding for purposes of article I, section 10, of the Illinois Constitution. In so concluding, the court considered that a "criminal case" is one in which a person's testimony "might tend to convict him of a criminal offense or subject him to a fine or incarceration." *McNairy*, 309 Ill. App. 3d at 223, 721 N.E.2d at 1202. The court held that because (1) a probation revocation hearing can have a profound impact on the life, liberty, and property of the defendant, and (2) after such a hearing the defendant might face additional fines or time in jail or prison, a probation revocation hearing meets the definition of a "criminal case" and more than the "minimum require-

ments" of due process are required. *McNairy*, 309 Ill. App. 3d at 223, 721 N.E.2d at 1202.

We disagree with the *McNairy* court's conclusion that the privilege against self-incrimination contained in the Illinois Constitution should be interpreted more broadly than that contained in the federal constitution. For the following reasons, we decline to follow *McNairy*.

■ Initially, we reject the *McNairy* court's conclusion that a probation revocation hearing is a criminal proceeding because of the consequences a probationer might face upon its resolution. " '[T]he fact that a proceeding will result in loss of liberty does not *ipso facto* mean that the proceeding is a "criminal prosecution." ' " *People v. Allen*, 107 Ill. 2d 91, 99, 481 N.E.2d 690, 694 (1985), quoting *Middendorf v. Henry*, 425 U.S. 25, 37, 47 L. Ed. 2d 556, 566, 96 S. Ct. 1281, 1289 (1976), *aff'd*, *Allen*, 478 U.S. at 375, 92 L. Ed. 2d at 308, 106 S. Ct. at 2995 (holding that sexually dangerous person proceedings are not criminal).

Moreover, proceedings that occur after the State files a petition to revoke probation are considered noncriminal and the probationer is entitled to fewer procedural rights than he would receive in a criminal trial. *People v. Kruszyna*, 245 Ill. App. 3d 977, 980, 615 N.E.2d 748, 751 (1993); *People v. Goleash*, 311 Ill. App. 3d 949, 955, 726 N.E.2d 194, 198 (2000). As this court explained in *People v. Bell*, 296 Ill. App. 3d 146, 149, 694 N.E.2d 673, 677 (1998), "[a] probation revocation proceeding has not been arbitrarily labeled a noncriminal proceeding. A sentence of probation is a form of agreement between a defendant and the criminal justice system with severe consequences if the agreement is broken." "The relaxed procedural safeguards involved in adjudicating whether a probationer violated a condition of probation do not offend due process because accusing someone of violating a condition of probation is not the equivalent of accusing him of committing a criminal act." *Goleash*, 311 Ill. App. 3d at 956, 726 N.E.2d at 199.

■ Accordingly, at probation revocation hearings, (1) the State need prove a violation of probation only by a preponderance of the evidence, rather than beyond a reasonable doubt (*People v. Williams*, 303 Ill. App. 3d 264, 268, 707 N.E.2d 729, 731 (1999)); (2) the procedural protections that apply to admissions of a violation of probation are less stringent than those for entering a guilty plea in a criminal case (*Goleash*, 311 Ill. App. 3d at 956, 726 N.E.2d at 198); (3) evidentiary standards are relaxed (*In re V.T.*, 306 Ill. App. 3d 817, 819, 715 N.E.2d 314, 316 (1999) ("the qualitative difference between a criminal prosecution and a revocation of probation allowed the trial court greater discretion in determining whether to admit" certain evi-

dence)); and (4) a criminal *mens rea* is not required for a probation violation (*People v. Neckopulos*, 284 Ill. App. 3d 660, 663, 672 N.E.2d 757, 760 (1996) ("Probation is a privilege to be employed when 'the defendant's continued presence in society would not be threatening and the defendant's rehabilitation would be enhanced.' [Citation.] Due to the fact that the purposes of probation may be frustrated by nonculpable acts, revocation of probation need not be based on the wilful conduct of the defendant")).

■ We recognize that, in appropriate cases, Illinois courts have "the right and obligation" to interpret our state constitution more liberally than similar provisions of the federal constitution (*People v. Perry*, 147 Ill. 2d 430, 436, 590 N.E.2d 454, 456 (1992)) and that the Supreme Court of Illinois has rejected "lockstep" interpretation of article I, section 10, of the Illinois Constitution (*People v. McCauley*, 163 Ill. 2d 414, 423, 645 N.E.2d 923, 929 (1994) (holding that the defendant's waiver of his right to counsel was not valid under article I, section 10, of the Illinois Constitution even though it was valid under the fifth amendment of the federal constitution)). However, the nature of probation revocation proceedings has been considered by this court, our sister courts in Illinois, and the United States Supreme Court, and it has unanimously been held that probation revocation proceedings are not criminal proceedings. We find these cases to be well reasoned, and we are not persuaded to depart from this line of precedent and join *McNairy* in expanding the privilege against self-incrimination under the Illinois Constitution. Nor are we inclined to reverse our holding in *Martin* that a defendant's federal privilege against self-incrimination is not violated when he is called to testify at his probation revocation hearing. *Martin*, 226 Ill. App. 3d at 759, 589 N.E.2d at 818.

■ In this case, defendant testified to the circumstances surrounding his signing in and out of jail on January 3 and 4, 2000. His testimony did not otherwise incriminate him. Accordingly, we hold that defendant's privilege against self-incrimination under either the fifth amendment to the United States Constitution or article I, section 10, of the Illinois Constitution was not violated when he was called to testify to these facts at his probation revocation hearing.

### B. Defendant's Due Process Rights

Defendant next argues that his due process rights under the fifth amendment of the United States Constitution and article I, section 2, of the Illinois Constitution (U.S. Const., amend. V;. Ill. Const. 1970, art. I, § 2) were violated when he was forced to testify at his probation revocation hearing. We disagree.

■ In Illinois, due process is satisfied if the probationer (1) is notified of the charge; (2) has the opportunity to be heard; (3) has the opportunity to present evidence and confront witnesses; and (4) is represented by counsel. The probationer is also entitled to (1) a fair determination that the acts upon which the probation violation is predicated actually took place; and (2) fairness throughout the proceeding. *People v. Steele*, 283 Ill. App. 3d 413, 415, 670 N.E.2d 757, 758-59 (1996).

In *Bell*, 296 Ill. App. 3d at 151, 694 N.E.2d at 678, the defendant argued on appeal that being forced to testify at his probation revocation hearing violated his due process rights under the state and federal constitutions. This court rejected the defendant's argument and explained, in part, that in a civil proceeding, a litigant has a right not to testify and when a party refuses to testify, the court is entitled to draw negative inferences against the nontestifying party. *Bell*, 296 Ill. App. 3d at 153, 694 N.E.2d at 679. We adhere to our decision in *Bell*.

■ Moreover, our review of the record reveals that defendant's probation revocation proceedings were fairly conducted. Defendant contends that he was "made to admit" to violating his probation. Defendant's contention is inaccurate. Defendant answered questions regarding his conduct on January 3 and 4, 2000. On direct examination by defense counsel, defendant explained the circumstances of his conduct in great detail. The trial court then had the duty to determine whether defendant's actions constituted a violation of his probation. Because (1) defendant had the opportunity to present evidence and cross-examine witnesses, (2) he was represented by counsel, and (3) the proceedings were conducted in a fair and impartial manner, we hold that defendant's due process rights were not violated by his being called to testify as an adverse witness for the State at his probation revocation hearing.

## C. Sentence Credit

■ Last, defendant argues that he is entitled to "day-for-day credit" for time served in custody pursuant to *People v. Welty*, 275 Ill. App. 3d 10, 655 N.E.2d 315 (1995). Specifically, defendant maintains that he should have received 304 days' credit for the 152 days he served in custody. We disagree.

The record reflects that the trial court credited defendant with 121 days for time he served before his initial sentencing and 31 days for time served in custody on the probation revocation, for a total of 152 days. We reject defendant's argument that he is entitled to 304 days' credit for having served 152.

We have located no case in which a defendant's credit for time

served was calculated as defendant suggests, and defendant cites none. In *Welty*, the case defendant relies on, the appellate court appears to use the terms "day-for-day credit" and "credit for time served" interchangeably. However, the court also explained that credit for time served is awarded to ensure that no defendant actually serve more time than that to which he is ultimately sentenced. *Welty*, 275 Ill. App. 3d at 13, 655 N.E.2d at 317. On the other hand, the "day-for-day credit" provisions of section 3—6—3 of the Unified Code of Corrections allow a convicted felon to earn credit for good behavior once he begins serving his prison sentence. 730 ILCS 5/3—6—3 (West 1998). The day-for-day good-time credit provisions were enacted to provide felonious inmates with incentive to conform their behavior to prison rules (*People v. Burton*, 100 Ill. App. 3d 1021, 1023, 427 N.E.2d 625, 628 (1981)), and allowance of good-time credit rests with the Director of the Department of Corrections, not the courts (730 ILCS 5/3—6—3 (West 1998)). While the language used in *Welty* is confusing, the result the court reached did not appear to grant the defendant 156 days' credit for the 78 that he actually served in custody prior to sentencing. See *Welty*, 275 Ill. App. 3d at 17-18, 655 N.E.2d at 320. Accordingly, we hold that the trial court did not err by awarding defendant 152 days' credit for time served.

### III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

McCULLOUGH and KNECHT, JJ., concur.